FILED
2020 Sep-01  PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| SUSAN MICHELLE OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:18-cv-00029-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Susan Michelle Owens, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). Owens timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Owens was 45 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has completed one year of college. (Tr. at 24, 200, 205.) Owens previously worked as a carpet yarn winder and later as a medical transcriptionist. (Tr. at 104.) Owens claims that she became disabled on February 1,

1

2013, suffering from chronic back and joint pain, diabetes, anxiety, depression, heel spurs, plantar fasciitis, chronic neck and shoulder pain, and carpal tunnel syndrome. (Tr. at 120.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440

2

F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether Plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing her past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can

make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*;

*see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other

work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Owens

met the insured status requirements of the Social Security Act through December

31, 2018. (Tr. at 15.) The ALJ further determined that Owens has not engaged in

SGA since February 1, 2013, the alleged onset date. (*Id.*) According to the ALJ,

Plaintiff has the following severe impairments: microcytic anemia, mild; obesity;

major depressive disorder (MDD), single episode, moderate; anxiety disorder,

NOS; migraine headaches, without aura; cervicalgia; plantar fascial fibromatosis

(chronic), s/p right plantar fasciotomy; osteoarthritis (OA), NOS; systemic lupus

erythematous (SLE), mild; fibromyalgia (FM); degenerative disc disease (DDD) at

C5-6 and C6-7, mild; and history of bilateral CTS release. (*Id.*) However, the ALJ

found that these impairments neither meet nor medically equal any of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)  The ALJ

determined that Owens has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b). The
> undersigned further finds, however, that the full range of light work that

could be performed by the claimant is reduced by the following functional limitations: the claimant would require a sit/stand option with the retained ability to stay on or at a work station in no less than 30 minute increments each without significant reduction of remaining on task and she is able to ambulate short distances up to 100 yards per instance on flat hard surfaces. She is able to use bilateral hand controls frequently. She can occasionally climb ramps and stairs but never climb ladders or scaffolds. She can frequently stoop, crouch, kneel, and crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. The undersigned further finds that the claimant would be limited to routine and repetitive tasks and simple work-related decisions. She could have frequent interaction with supervisors and occasional interaction with co-workers and the general public. In addition to normal workday breaks, the claimant would be off-task 5% of an 8-hour workday (non-consecutive minutes).

(Tr. at 18.)

According to the ALJ, Owens "is unable to perform any past relevant work." (Tr. at 24.) The ALJ also determined that Owens is a "younger individual age 18-49." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline. (*Id.*) The VE found that there are a significant number of jobs in the national economy that Owens is capable of performing, such as garment sorter, inspector/packer, and labeled coder. (Tr. at 24-25.) The ALJ concluded that Owens "has not been under a disability, as defined in the Social Security Act, from February 1, 2013, through the date of this decision." (Tr. at 25.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. Appendix 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Owens alleges that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ failed to accord proper weight to the opinion of psychologist Dr. June Nichols; (B) the ALJ erred in rejecting Owens's subjective complaints of pain; (C) the ALJ failed to conduct a proper analysis of Plaintiff's fibromyalgia under Social Security Ruling (SSR) 12-2p; and (D) the ALJ failed to adequately consider Plaintiff's testimony concerning the side effects of medication.

### A.   The ALJ Accorded Proper Weight to the Opinion of Dr. Nichols

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends, among other things, upon the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants. . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x

410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Plaintiff claims that the ALJ's decision should be reversed because the ALJ failed to accord proper weight to the opinion of Dr. Nichols. Nichols conducted an examination on April 29, 2015, wherein she found that Owens has major depressive disorder, panic disorder without agoraphobia, chronic pain, diabetic neuropathy, chronic pain in hands and feet, plantar fasciitis, and problems with social environment. (Tr. at 389.) Dr. Nichols indicated in her treatment notes that Owens

10

exhibited a depressed mood and a tearful and anxious affect. (Tr. at 388.) However, Dr. Nichols also noted that Owens's appearance was neat, eye contact was fair, speech was clear and normal, stream of consciousness was clear, immediate memory functions were fair, general fund of knowledge was adequate, thought processes were normal, thought content was normal, judgment and insight were good, and that Owens cooperated throughout the evaluation. (Tr. at 388-89.) Moreover, Dr. Nichols opined that Owens does not demonstrate any deficits that would interfere with her ability to remember, understand, and carry out work-related instructions. (Tr. at 389.)   However, the severe anxiety and panic attacks would markedly interfere with Owens's concentration, persistence, and pace. (*Id.*)

Dr. Nichols performed another evaluation on August 3, 2015, in which Plaintiff documented normal insight, judgment, and behavior, but recommended a change in medication for dysphoric mood. (Tr. at 682.) Similarly, Dr. Nichols found no change at the third examination on November 23, 2015, and recommended another change in medication. (Tr. at 683.)

Although Dr. Nichols treated Plaintiff three times, she offered her opinion after the first time she examined Plaintiff, before any treatment relationship had formed. (Tr. at 22, 389). Accordingly, her opinion is not entitled to the deference

11

that a treating physician's opinion would be. However, even assuming Dr. Nichols is construed as a treating physician, the ALJ had good cause to discount her opinion.

The ALJ accorded "some" weight to Dr. Nichols's opinion. (Tr. at 23.) Substantial evidence supports the ALJ's decision. Although Dr. Nichols claims that Owens would have a marked interference with concentrating, persisting, or maintaining pace due to her severe anxiety and panic attacks, the ALJ found that the examinations have produced no evidence of significant deficits in this area. (Tr. at 17, 389.) The ALJ found Dr. Nichols's opinions to be generally consistent with medical evidence on record, but overall inconsistent with Plaintiff's testimony, her own subsequent treatment record, and the findings of other doctors in the record. (Tr. at 23.)

First, Dr. Nichols's opinion is inconsistent with Plaintiff's testimony. Owens mentioned anxiety twice: she takes medication for anxiety and that she suffers from anxiety and depression caused by her SLE. (Tr. at 84, 96.) However, Owens did not discuss the effects of her anxiety further. She explained that she has trouble concentrating and second guesses herself, but she does not attribute these effects to anxiety. (Tr. at 92-93.) Although she reported to Dr. Nichols that she began having panic attacks in her thirties with an increase in frequency over time, she did not mention having panic attacks in her testimony; her attorney only references the panic

disorder diagnosis by Dr. Nichols. (Tr. at 111, 388.) Therefore, there is no evidence from Plaintiff's testimony to support Dr. Nichols's opinion that Owens has severe anxiety or panic attacks that would markedly interfere with concentration, persistence, or pace.

Second, Dr. Nichols's treatment records demonstrate some internal inconsistencies. The ALJ noted that at the initial evaluation in April 2015, Dr. Nichols found in the mental status examination that Owens's concentration and memory were intact, and the conversation pace was within normal limits. (Tr. at 22, 388.) However, Dr. Nichols opined in the same treatment notes that Owens faces a marked interference with her ability to concentrate and maintain pace. (Tr. at 389.) In Dr. Nichols's following examinations, she found normal appearance, behavior, insight, judgment, thought processes, and thought content. (Tr. at 682-83). Dr. Nichols recommended only a change in medication for the depression. (*Id.*) Ultimately, there exists only minimal and conflicting evidence within Dr. Nichols's treatment notes of anxiety severe enough to markedly interfere with concentration, persistence, and pace. (Tr. at 23, 387-89.)

Third, Dr. Nichols's opinion is inconsistent with the opinions of Dr. Fleming and Dr. Estock. Dr. Fleming, the psychological consultative examiner, examined Plaintiff on December 22, 2014. (Tr. at 365.) The ALJ noted that Owens complained

13

of vegetative symptoms, such as depression and low energy, but she was receiving some benefit from medication. (Tr. at 21, 365-66.) Dr. Fleming indicated in his treatment notes that Owens would have some difficulty responding to supervisors, coworkers, and work pressures due to her state of depression, and she should seek care from a mental health practitioner. (Tr. at 22, 368.) Contrary to Dr. Nichols, Dr. Fleming found that Owens displayed adequate concentration and attention. (Tr. at 21, 367-68.) The ALJ accorded great weight to Dr. Fleming's opinion because the matters on record are within his specialty, and his opinions are internally consistent and consistent with Owens's presentation when seeing other treating examiners. (Tr. at 23.)

The ALJ accorded substantial weight to the opinion of Dr. Estock, the reviewing medical expert, because it was consistent with the other opinions on record. (*Id.*) In the mental RFC assessment of the disability determination explanation, he found Owens's attention, concentration, and memory to be adequate. (Tr. at 131-32.) Consistent with Dr. Fleming's findings, Dr. Estock found Owens's ability to carry out detailed instructions to be moderately limited but found no other sustained concentration or persistence limitations. (Tr. at 131.) However, the ALJ concluded that a finding of no more than a mild limitation is more consistent with the MSE results and other treatment notes in the record. (Tr. at 23.) Dr. Estock

further opined that Owens's contact with the general public and coworkers should be casual and feedback should be supportive and constructive due to her major depression. (Tr. at 132.)

In sum, there is no evidence on record that demonstrates that Plaintiff has more than a mild limitation in her ability to concentrate, persist, or maintain pace. As demonstrated above, substantial evidence supports the ALJ assigning some weight to Dr. Nichols's opinion because it is overall inconsistent with other evidence in the record.

## B.    Subjective Complaints

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards*, 937 F.2d at 584. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See*

20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which Plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), vacated for rehearing en banc, 774 F.2d 428 (11th Cir. 1985), reinstated sub nom., *Hand v. Bowen*, 793 F.2d 275 (11thCir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding

supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Plaintiff claims that the ALJ's decision should be reversed because the ALJ stated but did not apply the proper pain standard. The ALJ noted that the impairments causing Owens's underlying medical condition could reasonably be expected to cause her alleged symptoms, satisfying part of the pain standard. (Tr. at 19.) However, the ALJ found that Owens's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that is inconsistent with her subjective complaints. (*Id.*) The ALJ covers a variety of evidence to support his conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. 18-23.)

The ALJ noted that Owens reported numbness, burning, and weakness in her hands, at first attributed to diabetic peripheral neuropathy. (Tr. at 19-20.) However, a 2015 nerve conduction study and 2016 testing revealed no evidence of neuropathy, nerve impingement, or polyneuropathy. (Tr. at 19-20, 383, 602.) The ALJ also noted that in 2016 Owens reported suffering from migraines 15 days each month as well as nausea, photophobia, and phonophobia. (Tr. at 20, 520.) Conversely, other records

reflect no reports or observations of debilitating headaches, and a 2016 brain MRI showed no remarkable results. (Tr. at 20, 521, 526.)

Further, the ALJ found that Plaintiff has multiple impairments that may cause or contribute to fatigue, but the record failed to provide evidence for the incapacitating quality of the fatigue. (Tr. at 20.) The ALJ noted that although Owens identifies FM and SLE as sources of debilitating pain that contribute to her fatigue, Dr. Chindalore, Plaintiff's treating rheumatologist, characterizes her SLE as mild and recorded good range of motion despite her FM. (Tr. at 20-21, 424, 535-36, 625-26.)

Additionally, Owens denied significant fatigue at various points in the record. (Tr. at 339, 436, 629.) Dr. Castillo, Plaintiff's treating hematologist, consistently described her fatigue as mild in his examination notes dated from December 2014 to October 2016.  (Tr. at 348, 450, 465, 471, 636.) Plaintiff has not demonstrated that she experiences fatigue that would affect her ability to work. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (rejecting claim that the ALJ failed to consider medication side effects where the claimant scarcely complained of side effects, and her physicians did not express concern about side effects).

Regarding Plaintiff's plantar fasciitis, the ALJ explained that Plaintiff's foot impairment did not substantially affect her gait; she either denied gait abnormality

or her gait was documented as normal throughout several examinations dated from April 2014 to August 2016. (Tr. at 20-21, 340, 361, 505, 509, 523, 610.) Plaintiff had surgery on her right foot on August 17, 2016, with no complications. (Tr. at 597.) The ALJ considered the examination conducted by Dr. Raines, Plaintiff's treating family physician, on October 28, 2018, just 10 days before the hearing, wherein Dr. Raines noted no evidence of bone abnormality, edema, motor or sensory deficits, or muscle atrophy. (Tr. at 21, 677.) The ALJ took the information from Dr. Raines's examination to suggest that Owens is on her feet more frequently and more physically active than she alleged at the hearing. (Tr. at 21.) Additionally, Plaintiff testified that she does not use a brace or cane; she wears orthotics, and occasionally a boot at night if she has a flare-up. (Tr. at 86.) Plaintiff has not demonstrated that her foot impairment would affect her ability to work.

Plaintiff's treatment history further supports the ALJ's findings. The ALJ noted that treatment records indicate Plaintiff's hypothyroidism, fibromyalgia, anemia, and hypertension are successfully addressed with medication, oral supplements, or transfusion therapy. (Tr. at 20, 434, 437, 511, 553, 671, 675.) *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (The ALJ properly considers type, dosage, and effectiveness of medication and treatment other than medication in evaluating subjective complaints). Moreover, Plaintiff's spine, shoulder, and foot x-rays found

no significant abnormalities. (Tr. at 299, 375, 412.) Two nerve conduction studies dated July 2015 and June 2016 showed no evidence of nerve impingement, neuropathy, or polyneuropathy. (Tr. at 383, 602.) A brain MRI conducted in March 2016 was unremarkable. (Tr. at 526.) Plaintiff has received mental health treatment from Dr. Nichols, who indicated in her treatment notes on April 29, 2015, that Plaintiff reported that her medications had been beneficial. (Tr. at 387.) In Dr. Nichols's treatment notes from November 23, 2015, Plaintiff showed "progress with effort" but Dr. Nichols recommended a change in medication because she found no symptom reduction. (Tr. at 683.) Plaintiff has not been hospitalized for any emotional or mental impairment. (Tr. at 86-87, 387.) The ALJ's decision to discount Plaintiff's allegations of subjective symptoms is supported by substantial objective medical evidence, including x-rays, nerve conduction studies, MRIs, and treatment with medication, supplements, and transfusion therapy.

Plaintiff's reported daily activities support the ALJ's subjective symptom findings as well. *See* 20 C.F.R. § 404.1529(c)(3)(i) (a claimant's reported daily activities are a factor in evaluating subjective complaints). In her testimony, Plaintiff stated that she drives a car once a week, shops for groceries alone, and goes to PTA and school conferences. (Tr. at 81, 88, 94.) Plaintiff further testifies that she can bend over to pick something up, and she has a step ladder that she moves and carries

around her kitchen to put away dishes. (Tr. at 90-91.) Owens stated that she does laundry and makes meals in small crockpots. (Tr. at 95, 101.) In her function report, Plaintiff indicated that her daily activities included preparing her son for school, picking him up from school, helping him with homework, preparing snacks and meals for him, shopping for groceries and clothing for about an hour, attending Bible study once a week, talking on the phone once a week, using a computer daily, and attending church on Wednesdays and Sundays. (Tr. at 228-29, 231-32.) Ultimately, Plaintiff's daily activities are not indicative of the disabling limitations she alleged.

Finally, the ALJ noted that despite Owens's alleged history with depression and anxiety, treatment records show that she typically presented with little evidence of emotional or mental distress and instead reflected normal mood and affect, intact memory, and good judgment and insight. (Tr. at 21, 300, 339, 450, 455, 463, 465, 471.) *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

Here, the ALJ did not disregard Plaintiff's fatigue and other symptoms, but instead found that the restricted range of light work described in the RFC would not affect Plaintiff adversely. (Tr. at 23.) The ALJ properly applied the pain standard and articulated explicit and adequate reasons for discrediting some of Plaintiff's

subjective complaints based on inconsistencies with the objective medical evidence on record. *See Moore*, 405 F.3d at 1212 (stating that subjective symptom determinations are the province of the ALJ). The ALJ's evaluation of Owens is supported by citation to specific evidence that articulates explicit reasons for discounting Owens's testimony. *See Dyer*, 395 F.3d at 1212; *Wilson*, 284 F.3d at 1226; *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that the plaintiff's ability to perform light work was properly found based on medical history and plaintiff's testimony).

### C.    Plaintiff's Fibromyalgia

Plaintiff contends that in formulating the RFC, the ALJ acknowledged a diagnosis of FM, but failed to consider SSR 12-2p, which governs how the Commissioner must consider fibromyalgia in the sequential evaluation process. *See* SSR 12-2p, 2013 WL 3104869 at *1, n.1 ("The policy interpretations in this SSR also apply . . . to claims above the initial level."). The Ruling essentially explains that fibromyalgia is a syndrome in which a person has long-term, body wide pain and tenderness in the joints, muscles, tendons, and other soft tissues. *See Id.* It also acknowledges that this condition has also been linked to fatigue, sleep problems, headaches, depression, and anxiety. The ruling "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment

. . . and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." *See Id*. SSR 12-2p provides that a person can establish that he or she has a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source. *Id*. at *2. Moreover, the Ruling provides:

> [W]e cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.

*Id*.

A claimant's RFC is the most he or she can still do despite his or her limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (a)(3). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c); 20 C.F.R. § 416.927(d)(2) (stating assessment of claimant's RFC is issue reserved for the Commissioner). In this case, the ALJ noted Plaintiff's fibromyalgia, considered it throughout the decision, and found that it was a medically determinable severe impairment (Tr. at 15, 20). Thus, the ALJ complied with SSR 12-2p. Moreover, the mere diagnosis of an impairment says nothing about its severity or limiting effects. *See Moore*, 405 F.3d at 1213 n.6 (the relevant concern is the extent to

which Plaintiff's impairments, by whatever name or diagnosis, limited her ability to work). Plaintiff has not advanced any evidence showing how her fibromyalgia resulted in any restrictions on her ability to work in excess of her assessed RFC for a modified range of light work.

Indeed, the ALJ discussed in detail several examinations in Plaintiff's medical record from both before and after her fibromyalgia diagnosis. (Tr. at 20-21.) Dr. Haynes, Plaintiff's treating physician, indicated in her treatment notes from April 8, 2014, that Plaintiff demonstrated normal motor strength, normal movement of all extremities, no bone abnormalities, and no tenderness. (Tr. at 340.) Dr. Castillo similarly reported in his treatment notes from November 2014 and February 2016, after Plaintiff's fibromyalgia diagnosis, that Plaintiff showed no joint tenderness or swelling. (Tr. at 348, 450.)  At an examination in December 2014, Dr. Rickless found normal range of motion, 5/5 muscle strength, tenderness in the lumbar area only, and no spasms. (Tr. at 356-57, 360-61.) Dr. Rickless also noted that Plaintiff's diffused joint pain was being treated. (Tr. at 362.) At a visit with Dr. Raines in September 2015, which the ALJ notes was one month before her fibromyalgia diagnosis, Plaintiff reported no joint pain or swelling. (Tr. at 21, 504.)

Following Plaintiff's diagnosis, Dr. Chindalore, a rheumatologist, indicated in his treatment notes from four visits in December 2015, February 2016, May 2016,

and August 2016 that Plaintiff showed positive for all fibromyalgia trigger points, back spasms, muscle spasms, and painful range of motion. (Tr. at 20, 428, 433, 536, 626.) However, Dr. Chindalore consistently documented good range of motion in the neck, shoulders, hands, wrists, hips, knees, and ankles. (Tr. at 20-21, 427-28, 432-33, 535-36, 625-26.) Dr. Chindalore also noted in his August 2016 treatment notes that Plaintiff had "some pain since she is off mobic due to stomach issues," which suggests that Plaintiff's pain is normally treated successfully with medication. (Tr. at 626.)

Dr. Vincent, Plaintiff's neurologist, indicated in examination notes from March 2016 that Plaintiff was positive for joint pain, joint swelling, and muscle aches, but found normal motor function and a healthy appearance. (Tr. at 21, 522-23.) At three different examinations performed by Dr. Raines in July, August, and October 2016, Owens reported joint pain but denied having joint stiffness, muscle cramps, muscle stiffness, restricted motion, and weakness. (Tr. at 555, 672, 676.)

Additionally, SSR 12-2p provides that other impairments that can cause the same or similar symptoms as fibromyalgia must be excluded in determining whether fibromyalgia is a medically determinable impairment for a claimant. 2012 WL 3104869, at * 3. The ALJ specifically noted that she accorded Plaintiff some benefit of the doubt in finding that her fibromyalgia constituted a medically determinable

impairment because the record did not document the specific findings necessary to meet the SSA's criteria, such as the specific exclusion of other impairments that might be the source of reported fibromyalgia symptoms. (Tr. at 20.) The record indicates that Plaintiff has other impairments including degenerative disc disease, arthritis, and SLE which could reasonably be expected to produce pain, soreness, and other similar symptoms. (Tr. at 525, 530, 679.) Moreover, as discussed in section (B), the treatment Plaintiff received for her conditions did not substantiate her claim of severe limitations.

### D.    Plaintiff's Testimony Concerning the Side Effects of Medication

Plaintiff also argues that the ALJ failed to consider how Plaintiff's medications affect her ability to work. Plaintiff testified that her medication makes her drowsy. (Tr. at 81.) Contrary to Plaintiff's assertion, the ALJ did discuss Plaintiff's alleged fatigue and exhaustion in making the subjective symptom finding. (Tr. at 19.) Moreover, Plaintiff denied both side effects and significant fatigue at various points in the record (Tr. at 264, 310, 339, 348, 436, 450, 455, 465, 471, 629). As previously discussed, the medical evidence did not demonstrate that she experiences fatigue that would affect her ability to work. On April 29, 2015, treatment notes from a visit with Dr. Nichols revealed that Plaintiff reported her medications had been beneficial. (Tr. at 387.) On November 13, 2014, Plaintiff was first referred to Dr. Castillo by Dr.

Haynes for complaints of fatigue due to taking iron daily; however, Dr. Castillo consistently did not express concern about side effects and considered the fatigue to be mild. (Tr. at 348, 450, 465, 471, 636.) Although Plaintiff testified that she naps for about four hours a day, Dr. Raines noted no evidence of muscle atrophy on October 28, 2018, suggesting that Plaintiff is more active than she alleges. (Tr. at 21, 94-94, 677.) Furthermore, the ALJ appropriately accounted for sleepiness and drowsiness from medication and articulated in the RFC that Owens should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes, or operate commercial motor vehicles. (Tr. at 18.)

## IV.  Conclusion

Upon review of the administrative record, and considering Plaintiff's arguments, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 1, 2020.

_____
L. Scott Coogler
United States District Judge

160704